IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| David Bell, Willie F. Beckton, Victoria Dupree, Will Vera, Jr., Chauntann Reid, Lawrence H. Thomas, Brian Perry, Brian Pollitt, Thomas M. Shaw, Antoine M. Goins, Wendolus L. Hart, Corey J. Brown, Mark E. Hilton, Avignon Dent and Ryan K. Stewart, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY<br>1234 Market Street<br>Philadelphia, PA 19107,<br><br>Defendant. | CIVIL ACTION<br>NO. 11-CV-_____( )<br><br>JURY TRIAL DEMANDED |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs, by and through their undersigned counsel, after inquiry reasonable under the circumstances, on behalf of themselves and all others similarly situated, allege as follows:

### INTRODUCTION

1. This is an "off-the-clock" overtime case under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") brought to remedy widespread violations of the FLSA by defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") that have deprived plaintiffs, and other similarly situated SEPTA employees, of straight and overtime wages to which they are entitled.

2. Under state and federal law and SEPTA's standard operating rules, plaintiffs are required to perform a comprehensive pre-trip safety inspection of their vehicles before the start of each run. This pre-trip inspection takes at least 15 minutes to complete. SEPTA bus drivers and trolley operators ("Operators") must check as many as 19 distinct items, ranging from the

vehicle's braking system, to the operation of its lights, horns, doors and public address system. This pre-trip inspection applies to all SEPTA bus drivers. A similar pre-trip safety inspection is required of all SEPTA trolley operators. SEPTA trolley operators may also be required to operate and inspect a bus.

3. This case involves only the first pre-trip inspection of the day, which usually – though not always – occurs in the morning. There is a different lawsuit pending in this judicial district that covers Operators' second-half pre-trip inspections. All references to the pre-trip inspection in this Complaint are to the first inspection only, unless specifically stated otherwise.

4. Under the FLSA, Operators must be paid 1.5 times their regular rate of pay for all hours worked over 40 in any given week. This statutory protection applies to plaintiffs and other similarly situated SEPTA Operators.

5. Despite this requirement, SEPTA does not pay its Operators (neither bus drivers nor trolley operators) to perform the mandated pre-trip inspection at the start of their runs. In many cases, Operators who perform pre-trip inspections already work at least 40 hours in a week without including the time spent performing the pre-trip inspection. In other cases, SEPTA Operators who perform the required pre-trip inspection work more than 40 hours in a week once the pre-trip inspection time is included.

6. SEPTA's failure to pay for the pre-trip inspections either way results in unpaid work performed in violation of the FLSA. SEPTA's long-standing policy of not compensating Operators for the time spent performing the required safety inspection constitutes a willful violation of the FLSA.

7. SEPTA's failure to pay Operators for the time spent over 40 hours a week performing the mandated safety inspections affects Plaintiffs and several thousand similarly

situated Operators working in SEPTA's City Transit Division, Frontier Division, Suburban Transit Division and in SEPTA's Philadelphia Trenton Coach Division.

8. Plaintiffs bring this action as a collective action pursuant to 29 U.S.C. §216(b) on behalf of the following:

> All former and current SEPTA Operators
>
> - who are or were employed by SEPTA and work[ed] out of SEPTA's City Transit Division, Frontier Division, Suburban Transit Division, and/ or SEPTA's Philadelphia Trenton Coach Division who
>
> - within three years of the commencement of their participation in this lawsuit
>
> - operated a SEPTA bus and/or trolley
>
> - during a week in which they worked more than 40 hours or worked more than 40 hours when the time spent performing the pre-trip inspection is included.

9. Plaintiffs will seek certification of this described class at the appropriate time in this litigation.

10. Plaintiffs, on behalf of themselves and other similarly situated Operators, seek three years of unpaid compensation, an equal amount of liquidated damages, attorneys' fees and costs, and all other available and appropriate relief to which they, and all of those who opt in to this action, are entitled.

## **PARTIES**

11. Plaintiffs David Bell, Willie F. Beckton, Victoria Dupree, Will Vera, Jr., Chauntann Reid, Lawrence H. Thomas, Brian Perry, Brian Pollitt, Thomas M. Shaw, Antoine M. Goins, Wendolus L. Hart, Corey J. Brown, Mark E. Hilton, Avignon Dent and Ryan K. Stewart are all adult individuals employed by SEPTA, residing and/or working within this judicial

district. In accordance with 29 U.S.C. §§216(b) and 256(a), each plaintiff's written consent to become a party plaintiff to this action is being filed with this Court contemporaneous with the filing of this Collective Action Complaint.

At different times within three years before the commencement of this suit, each plaintiff has performed the mandated pre-trip inspection in weeks during which their total weekly work time exceeded 40 hours when the uncompensated pre-trip inspection time described in this Complaint is included. Plaintiffs performed the daily unpaid, pre-trip inspection "off the clock" before the start of their run.

12. Defendant SEPTA is a regional public transit authority organized under the laws of the Commonwealth of Pennsylvania, with its principal executive offices located at 1234 Market St., Philadelphia, Pennsylvania 19107. SEPTA is an employer within the meaning of the FLSA.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

14. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. 1391(b)-(c), because the acts complained are taking place in this judicial district, and because SEPTA maintains its principal place of business within this judicial district.

## FACTS

15. SEPTA has promulgated various work rules and policies covering plaintiffs and other similarly situated Operators, including a Bus Operations Rules and Regulations Manual ("Operating Manual"), the relevant sections of which are attached hereto as **Exhibit A**.

16. According to Authority Standard Rule ("ASR") Number 5 of SEPTA's Operating Manual: "Employees must report for duty at the required time and at the required location, in

accordance with schedules set up in the employees' particular departments and locations . . . not less than ten minutes" before the start of their scheduled "pull out" time; i.e. the time when their bus is scheduled to leave the depot and begin operating in revenue service. Ex. A at p. ASR-10.

17. According to SEPTA Operational Rule ("OR") Number 50: "When reporting for duty, Operators must fill out all forms and waybills that may be required prior to operating the vehicle. Before going off duty, they are responsible to turn in all, waybills, transfers, V[ehicle] C[ondition] R[eport]s, special cards surveys, or any other applicable reports, themselves." Id. at p. C-7.

18. During the 10-minute report time referenced in ASR-5, Operators are required to check-in with the dispatcher, collect and punch their passenger transfers, check the bulletin board for detours and other daily operating conditions, copy their run schedule, determine the location of their assigned vehicle, walk to the location where the vehicle is parked, start the vehicle and pull-out of the depot.

19. Before 1992, the pre-trip vehicle safety inspection was not required under either federal or state law. Before this lawsuit was filed, however, the extensive and time-consuming pre-trip safety inspection became a legal requirement for all operators of commercial motor vehicles and a SEPTA requirement for all operators of passenger vehicles not covered by statute, namely trolleys. As a result, SEPTA adopted Operating Rule-150, which provides:

> Prior to departing from any bus yard, or when making relief, Operators/Employees must make an inspection of their vehicle in accordance with the current outlined procedure. This inspection must be made utilizing the Vehicle Condition Report, (VCR), the CDL Pre-Trip/Relief Inspection Checklist/Quality Control Appearance Checklist provided for that purpose.

Ex. A at p. C-13.

20. There is no doubt that the safety inspection is an integral and indispensable part of the principal activities for which Plaintiffs and other SEPTA Operators are employed. Nonetheless, SEPTA does not pay its bus drivers and trolley operators to perform these pre-trip inspections. Consequently, to perform the pre-trip inspection, each bus driver and/or trolley operator must begin his/her day's work before the 10 minute report time referenced in ASR-5 and complete the pre-trip inspection "off the clock."

21. It takes about 15 minutes (depending on the condition of the bus or trolley and other factors) to conduct the pre-trip inspection and complete the required forms. Each Operator must inspect and/or check 19 distinct items on the vehicle, ranging from the tire tread and pressure to the proper operation of the air brakes and the vehicle's lights and reflectors. The inspection checklist is attached hereto as **Exhibit B** and a statement of the tasks involved in the inspection is attached as **Exhibit C**. Each driver is required to inspect his/her vehicle and insure that the following items are in compliance with state law:

| | |
|---|---|
| 1.1 | Service/parking brakes |
| 1.2 | Air Pressure |
| 1.3 | Steering Mechanism |
| 1.4 | Lights and Reflectors |
| 1.5 | Horn |
| 1.6 | Windshield Wipers |
| 1.7 | Rear Vision Mirrors |
| 1.8 | Wheels, Rims and Tires |
| 1.9 | Emergency Equipment |
| 1.10 | Vehicle Registration & Insurance Card |
| 1.11 | Seat belt |
| 1.12 | Chock |
| 1.13 | Doors |
| 1.14 | Radios |
| 1.15 | P.A. System |
| 1.16 | Destination signs |
| 1.17 | Fare box |
| 1.18 | Lift/Securement device |
| 1.19 | Signed Previous VCR |

22. Before leaving the depot, each operator must sign and leave a copy of a completed inspection checklist for SEPTA supervision. Failure to conduct a pre-trip inspection can result in discipline and/or a $100 police ticket and the suspension of one's driver's license by the State Police.

23. SEPTA keeps records in the ordinary course of business sufficient to identify weeks in which an operator's total compensated and uncompensated work time exceeds forty hours, enabling one to calculate the regular and overtime pay attributable to the allegations of this Complaint.

24. When the CDL safety inspection became a mandate under state and federal law, SEPTA required its drivers to perform the inspection described above, however, SEPTA failed to provide additional paid-time in plaintiffs' schedules for performing the safety inspection. Thus, plaintiffs must perform the inspection on their own time, without being paid. Stated another way, SEPTA is repeatedly and on a daily basis forcing Operators to work "off the clock" to perform the required safety inspection.

25. Plaintiffs and all similarly situated SEPTA Operators are all subject to the same SEPTA policy and share a common interest in challenging SEPTA's determination that the work performed to complete the pre-trip inspection is not compensable.

## CLAIM FOR RELIEF
## VIOLATION OF FLSA

26. Plaintiffs incorporate by reference paragraphs 1-25 of this Complaint as if fully set forth.

27. Plaintiffs' claim is brought as an "opt-in" collective action under the FLSA. This lawsuit covers those current and former SEPTA bus and trolley operators who, factoring in

the time spent performing the safety inspection, worked in excess of 40 hours a week during all or some part of the past three years.

28. At all times material to this action, the overtime provisions of the FLSA as set forth in §207 of the Act have applied to SEPTA and to plaintiffs and to all other similarly situated SEPTA Operators.

29. SEPTA has willfully and intentionally engaged in ongoing and knowing violations of the overtime provisions of the FLSA by requiring plaintiffs and all other similarly situated Operators to conduct safety inspections before the start of their runs, but not paying them for the time required to perform the safety inspection, and not counting the inspection time for purposes of calculating overtime. SEPTA's willful violation of the FLSA entitles plaintiffs and other similarly situated Operators to three years of damages pursuant to 29 U.S.C. §255(a).

30. FLSA rights cannot be abridged by contract or otherwise waived. Moreover, the congressionally-granted FLSA rights at issue here take precedence over conflicting provisions, if any, respecting compensation arrangements in a collective bargaining agreement.

31. Since the pre-trip inspection in this action constitutes compensable principal activity under the Act, plaintiffs and other Operators' claims arise wholly independent of any collective bargaining agreement.

32. The distinct nature of plaintiffs' statutory and contractual rights is not vitiated because both may be violated as a result of the same factual occurrence. Moreover, no inconsistency would result if both rights were to be enforced in their respectively appropriate forums.

33. The FLSA's enforcement scheme grants individual employees broad access to the courts. No exhaustion requirement or other procedural barriers are set up and no other forum for enforcement of statutory rights is referred to or created by the FLSA.

34. As a result of the unlawful acts of SEPTA, plaintiffs and other similarly situated SEPTA Operators have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recover such amounts for three years, along with liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation to which they are entitled.

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated SEPTA Operators, pray for the following relief:

A. An Order permitting Plaintiffs to give timely notice of this action to all current and former SEPTA Operators

- who are or were employed by SEPTA and work[ed] out of SEPTA's City Transit Division, Frontier Division, Suburban Transit Division, and/ or SEPTA's Philadelphia Trenton Coach Division who

- within three years of the commencement of their participation in this lawsuit

- operated a SEPTA bus and/or trolley

- during a week in which they worked more than 40 hours or worked more than 40 hours when the time spent performing the pre-trip inspection is included.

Such notice should inform the recipients that this civil action has been filed, the nature of this action, and their right to opt-in to this lawsuit if they believe they have suffered the violations alleged here and wish to participate;

B. For the collective action set forth in this Complaint, damages in the amount of the Plaintiffs and opt-in participants' unpaid compensation, paid at the rate of time-and-one-half of their regular hourly rate of pay,

      plus an equal amount of liquidated damages, plus prejudgment interest as permitted by law;

C. An award sufficient to compensate Plaintiffs and all opt-in participants for any excess tax liability incurred due to receipt of a lump sum judgment;

D. Reasonable attorneys' fees;

E. The costs and expenses of this action; and,

F. Such other relief, including but not limited to any injunctive and/or declaratory relief to which plaintiffs may be entitled.

                **KAUFMAN, COREN & RESS, P.C.**

BY: _/s/ Bruce Bodner_
Bruce Bodner, Esq., I.D. # 79516
Howard J. Kaufman, Esq., I.D. # 09741
1717 Arch Street, Suite 3710
Philadelphia, PA 19103
(215) 735-8700

**Dated:** June 21, 2011    bbodner@kcr-law.com