IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID BELL, et al.,                          :
                                             :
            Plaintiffs,             :        CIVIL ACTION
                                             :
      v.                            :        NO. 11-4047
                                             :
SOUTHEASTERN PENNSYLVANIA           :
TRANSPORTATION AUTHORITY,           :
                                             :
            Defendant.              :

## OPINION

**Slomsky, J.**                                    September 28, 2012

## I.      INTRODUCTION

This matter involves overtime claims under the Fair Labor Standards Act, 29 U.S.C.

§ 201, ("FLSA") arising from Southeastern Pennsylvania Transportation Authority's ("SEPTA")

alleged failure to pay its employees for performing morning pre-trip inspections.[1]  Such a

violation may entitle Plaintiffs and other similarly situated employees to damages for three years

of work pursuant to 29 U.S.C. § 255(a).[2]

Before the Court is Defendant SEPTA's Motion to Dismiss the Complaint under Federal

---

[1]This action is related to a case previously filed in this Court and now settled, Cooper et al. v. Southeastern Pennsylvania Transportation Authority, no. 06-888, 2011 WL 3919742 (E.D. Pa. Sept. 6, 2011).  The plaintiffs in Cooper were "swing run" drivers who worked morning and afternoon shifts with a mid-day break.  The Cooper plaintiffs alleged they were not compensated for pre-inspections before their afternoon runs, in contrast to the morning pre-trip inspection at issue in this case.

[2] Under the FLSA, a case must be filed within two years after it accrues or it is barred, except in the instance of a willful violation, such as the alleged claim here.  29 U.S.C. § 255(a). The statute requires a willful violation to be filed within three years after the action accrues.  Id. When a willful violation is alleged, a plaintiff may be entitled to damages covering the three year period.  Id.

Rule of Civil Procedure 12(b)(1), arguing that arbitration is the appropriate forum for resolution

of this dispute.  (Doc. No. 12.)  Plaintiffs have filed a Memorandum in Opposition to SEPTA's

Motion (Doc. No. 17.), and Defendant has filed a reply brief.  (Doc. No. 18.)  A hearing on the

Motion was held on November 30, 2011.  (Doc. No. 24.)  For reasons that follow**,** the Court will

grant Defendant's Motion to Dismiss.

## II.    FACTUAL BACKGROUND

On June 21, 2011, Plaintiffs commenced this collective action[3] pursuant to 29 U.S.C.

§ 216(b) on behalf of all former and current SEPTA bus drivers and trolley operators

(collectively referred to as "Operators"): (1) who are or were employed by SEPTA and worked

out of SEPTA's City Transit Division, Frontier Division, Suburban Transit Division, and/or

SEPTA's Philadelphia Trenton Coach Division,[4] (2) within three years of the commencement of

their participation in this lawsuit, (3) and operated a SEPTA bus and/or trolley, (4) during a week

in which they worked more than 40 hours or worked more than 40 hours when the time spent

performing the pre-trip inspection is included.  (Doc. No. 1 ¶ 8.)

Defendant SEPTA is a regional public transit authority organized under the laws of

Pennsylvania, with its principal office located at 1234 Market Street, Philadelphia, Pennsylvania.

---

[3]On March 20, 2012, pursuant to provisions of the FLSA, Plaintiffs filed a Motion for Conditional Certification and Notification (Doc. No. 28), which is currently pending on the docket.  Given the resolution of the Motion to Dismiss, Plaintiffs' additional Motion will be denied as moot.

[4]Transport Workers Union Local 234 represents Operators in the City Transit and Frontier Divisions.  United Transportation Union Local 1594 represents Operators in the Suburban Transit Division.  All but two Plaintiffs are assigned to the City Transit Division, and the remaining two Plaintiffs are assigned to the Frontier and Suburban Transit Divisions respectively.  No Plaintiff is assigned to the Philadelphia-Trenton Coach Division.

(Id. ¶ 12.)  Plaintiffs allege SEPTA violated the FLSA by failing to pay "off-the-clock" overtime to its Operators for time spent performing morning pre-trip inspections.  (Id. ¶ 5.)  Plaintiffs, on behalf of themselves and other similarly situated Operators, seek three years of unpaid compensation, an equal amount of liquidated damages, attorney's fees and costs, and all other available and appropriate relief to which they are entitled.  (Id. at ¶ 10.)

According to Plaintiffs, under state and federal law, as well as SEPTA's standard operating rules, Operators are required to perform a pre-trip safety inspection of their vehicles before the start of each run.  (Doc. No. 1 ¶ 2.)  Each Operator must inspect and/or check at least nineteen distinct items on their vehicle, ranging from tire tread and pressure to the operation of the air brakes and vehicle's lights and reflectors.  (Id. ¶ 21.)  Prior to leaving the depot, each Operator must sign and leave a copy of a complete inspection checklist for SEPTA supervisors.  (Id. ¶ 22.)  Plaintiffs contend that, when the safety inspection became a mandate under state and federal law in the early 1990's, SEPTA required its drivers to perform the inspection, yet failed to provide additional paid-time for performing the inspection.  (Id. ¶ 24.)  As such, Plaintiffs allege they must perform the inspection on their own time prior to "clocking in" for the day.  (Id.)

Under the FLSA, Operators must be paid 1.5 times their regular rate of pay for all hours worked over 40 hours in any given week.  (Doc. No. 1¶ 4.)  According to Plaintiffs, Operators perform the daily unpaid, pre-trip inspection "off-the-clock" before the start of their run.  (Id. ¶ 11.)  Plaintiffs allege that SEPTA's failure to pay its Operators for the time spent performing pre-trip inspections results in unpaid overtime wages constituting a willful violation of the FLSA.  (Id. ¶¶ 5-6.)  Plaintiffs also contend that their FLSA rights cannot be abridged by contract or otherwise waived, and that such rights take precedence over any conflicting provision in the

requisite collective bargaining agreements (hereafter "CBAs") covering the Operators.  (Doc. No. 1 ¶¶ 30-32.)

Defendant submits, on the other hand, that SEPTA has long required its Operators to conduct inspections as part of their morning report.  (Doc. No. 12 at 4.)  Moreover, Defendant avers that the CBAs between SEPTA and the unions contain provisions covering pre-trip inspections and, in accordance with the terms of the CBAs, arbitration is the appropriate forum for any dispute.  (Id. at 4-5.)

Defendant contends that three CBAs govern Plaintiffs' terms and conditions of employment, and compensation for their first report of the day.  First, Section 401 of the CBA between Transport Workers Union Local 234 representing the City Transit Division Operators and SEPTA is entitled "Platform Work; Runs; Minimum Day," and contains the following provision governing compensation for pre-trip work.

> (c) Where an employee is required to report in advance of the scheduled starting time of one's run or to turn in passenger receipts or to so report and turn in, and does so, one-quarter hour will be added to the scheduled run time and the employee will be paid for the one-quarter hour at the aforesaid rate.  This one-quarter hour will be treated as time worked for all purposes except in calculating daily over time under Section 404(c).

(Doc. No. 12, Exhibit B(1) at 44.)  Second, the CBA between Transport Workers Union Local 234 representing Frontier Division Operators and SEPTA includes a provision governing report/turn-in allowance, which provides, in relevant part:

> (a)  The Authority will pay operators required to report ten (10) minutes in advance of pull-out and who are required to turn in receipts at the completion of said work one quarter (1/4) of an hour per day for report and turn-in allowance. Such allowance will not be included for the computation of overtime.

(Doc. No. 12, Exhibit B(2) at 26.)  Finally, the CBA between the United Transportation Union

Local 1594 representing Suburban Division's Operators and SEPTA contains a report/turn-in

time provision, which provides, in relevant part:

> An additional allowance of two-tenths (.2) of an hour per day will be allowed all
> regular Operators for reporting time for preparation for their assignments.  An
> additional one-tenth (.1) of an hour will be allowed all regular Operators for time
> consumed in performing clerical duties at the completion of their assignment.

(Doc. No. 12, Exhibit B(3) at 63.)

In addition to these provisions governing compensation for pre-trip inspections, each

CBA contains broad arbitration provisions addressing the proper framework for resolving

disputes arising out of policy change or interpretation of the collective bargaining agreement.

The CBAs for the City Transit Division and Frontier Division contain identical provisions

under Section 201, entitled "Grievance Handling," which compel the use of grievance-arbitration

procedures for certain disputes.  Specifically, these provisions require arbitration if "the dispute

involves the application, implementation or interpretation of any of the provision(s) of the

collective bargaining agreement" or when "the dispute involves a policy change by the Authority

which directly impacts [the] Labor Agreement."  (Doc. No. 12, Exhibit B(1) at 4-5); see also

(Doc. No. 12, Exhibit B(2) at 2-3.)  Further details regarding the arbitration procedures under

each CBA are found in Section 202, entitled "Arbitration."  (Doc. No. 12, Exhibit B(1) at 15-20);

see also (Doc. No. 12, Exhibit B(2) at 11-16.)

Moreover, the CBA with the United Transportation Union Local 1594 covering the

Suburban Division Operators contains grievance handling and arbitration terms, found in Articles

34 and 35.  (Doc. No. 12, Exhibit B(3) at 89-101.)  The specific provision relevant to this case

states as follows:

> When the subject matter of the dispute involves a policy change or a contract interpretation by the Authority which directly impacts [the] labor Agreement, the Union shall have the right to initiate a grievance at the Labor Relations hearing level.

(Doc. No. 12, Exhibit B(3) at 95.)

This case is not the first FLSA claim brought by SEPTA employees concerning a pre-trip morning inspection. (Doc. No. 12 at 7.) In or about 1996, the United Transportation Union Local 1594 or certain of its members filed a FLSA claim over morning pre-trip inspection. (Doc. No. 12 at 7.) The parties, however, subsequently agreed that arbitration was the appropriate forum. (Id.) The union therefore filed a grievance and litigated the issue in arbitration. (Id.) The arbitration panel denied the Union's grievance by a 2-1 vote. (Id.) In addition, as evidenced by this history and the CBAs between each union and SEPTA, the morning pre-trip inspection apparently has long been the subject of negotiations with the unions representing the Operators. (Id.)

## III. MOTION TO DISMISS STANDARD

Defendant SEPTA has moved to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(1), challenging the Court's jurisdiction to address the merits of the complaint because arbitration is the appropriate forum for resolution of the dispute. Federal Rule of Civil Procedure 12(b)(1) requires a court to grant a motion to dismiss if the court lacks subject-matter jurisdiction to hear a claim. Rule 12(b)(1) states:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1)  lack of subject-matter jurisdiction . . . .

Fed. R. Civ. P. 12(b)(1).  "[A] party asserting that the court has jurisdiction always bears the burden of showing that the case is properly before the court."  Birchall v. Countrywide Home Loans, Inc., No. 08-2447, 2009 WL 3822201, at *4 (E.D. Pa. Nov. 12, 2009) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)).  In deciding a Rule 12(b)(1) motion, a court must first determine whether its subject-matter jurisdiction under Rule 12(b)(1) is being challenged on a facial or factual basis.  Walthour v. Child & Youth Servs., 728 F. Supp. 2d 628, 635 (E.D. Pa. 2010).

> A facial attack challenges the sufficiency of Plaintiff's pleadings. When a defendant makes a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true.  Conversely, when a defendant makes a factual attack on the court's jurisdiction, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss.

Id. (internal citations and quotations omitted).

The parties agree that SEPTA raises a factual challenge to this Court's subject matter jurisdiction.  Thus, this Court need not credit Plaintiffs' allegations with a presumption of truthfulness.

## IV.  DISCUSSION

A.    <u>Federal Law in Support of Arbitration</u>

The Federal Arbitration Act ("FAA") provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out

of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  This statutory language "reflects a 'liberal federal policy favoring arbitration.'" Khan v. Dell Inc., 669 F.3d 350, 354 (3d Cir. 2012) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp,, 460 U.S. 1, 24 (1983)).  As such, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  Moses H. Cone Mem'l Hosp., 460 U.S. at 24.  In fact, the FAA "'requires courts to enforce the bargain of the parties to arbitrate.'"  Marmet Heath Care Center, Inc. v. Brown, 132 S. Ct. 1201, 1203 (2012) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985)).  "'Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.'"  Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 220 (3d Cir. 2012) (quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)).

Moreover, the Labor-Management Relations Act ("LMRA"), which governs the relationship between employers and unions states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  In discussing this provision of the LMRA, the Supreme Court preserved the power of arbitrators to interpret CBAs, specifically stating: "interpretation of collective-bargaining agreements remains firmly in the arbitral realm."  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 411 (1988).

This Court must adhere to the strong federal policy in favor of arbitration.  In this case, regardless of how Plaintiffs frame their grievance over the alleged failure to properly compensate them for work during the morning pre-trip inspection, it involves an interpretation of the CBAs. Since the terms of the CBAs require the parties to arbitrate disputes arising from contract interpretation, federal law requires that this procedure be followed and this Court will not override this clear mandate.

B.      Plaintiffs' FLSA Claims Require Interpretation of the CBAs

Plaintiffs assert that SEPTA requires Operators to perform morning pre-trip inspections without payment.  (Doc. 17 at 3.)  In contrast, Defendant contends that compensation for the morning inspections are covered by provisions of the CBAs.  While the CBAs discuss pre-trip inspections without referring specifically to the one done in the morning, any finding by this Court about the applicability of the provisions at issue to morning inspections necessitates an interpretation of the agreements.  Since this is an issue of contract interpretation, this claim must be decided by an arbitrator in accordance with the arbitration provisions in the CBAs.

In Vadino v. A. Valey Engineers, 903 F.2d 253 (3d Cir. 1990), the Third Circuit addressed a situation analogous to this case.  The plaintiff in Vadino alleged, in relevant part, that the defendant violated the FLSA in computing overtime wages by using the incorrect wage rate, where the wage rates were listed in the CBA.  In holding that this claim could not be pursued in federal court under the provisions of the FLSA, the Third Circuit found that "the FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement."  Id. at 265.  The

court, therefore, declined to interpret the CBA and determine the applicable wage rate, holding

that:

> claims which rest on interpretations of the underlying collective bargaining
> agreement must be resolved pursuant to the procedures contemplated under the
> [Labor Management Relations Act], specifically grievance, [and] arbitration[.]

 Id. at 266.  The Vadino decision further explained, "an employee cannot circumvent the

necessity of complying with the LMRA [grievance and arbitration] procedure to get a

determination of his or her right to the wages claimed."  Id. at 266.

    In an opinion applying Vadino, a Court in this District held that a FLSA claim required

arbitration when the plaintiff alleged certain activities were considered work under the FLSA.

Townsend v. BC Natural Chicken LLC, No. 06-4317, 2007 WL 442386 (E.D. Pa. Feb. 2, 2007).

The court reasoned that the claim required interpretation of the CBA provision addressing time

spent changing clothes and washing, and therefore, the issue must be arbitrated.  Id.

    Here, the holdings in Vadino and Townsend are persuasive in resolving the instant claim

of Plaintiffs.  The claim at issue in this case is compensation for morning pre-trip inspections

pursuant to the terms of the CBAs noted above specifically discussing the right to such

compensation.  Although Plaintiffs assert there is "no underlying dispute over any term of the

operative [CBAs]"  (Doc. No. 17 at 1), the Court disagrees.  Compensation for work conducted

prior to the official work start time is specifically addressed in each of the three CBAs.  Thus,

any finding about the applicability of these provisions to pre-trip morning inspections would

involve a question of interpretation of the CBAs, which is not a question for this Court to decide.

Rather, based on clear federal policy favoring arbitration and precedential case law on point, the

applicability of the terms of the CBAs must be arbitrated according the procedures established in the agreements, even when a claim is made under the FLSA.

      C.     Negotiation History and Pre-Trip Inspection Compensation

In addition to the compelling federal policy and case law requiring the arbitration of CBA issues involving contract interpretation, other related matters further support this Court's decision to dismiss this matter.

As noted previously, SEPTA and the unions have bargained over the compensable nature of a pre-trip inspection at the negotiating table, which resulted in the terms quoted above in the CBAs. (Doc. No. 12 at 7). In addition, in a related action which was previously settled, Cooper v. SEPTA, 2011 WL 3919742, Allison Cooper, a plaintiff in that case and in this one who is also a union officer, provided a sworn affidavit in regard to morning inspection that states:

> 13.    The first pretrip inspections are "on the clock." In other words, SEPTA pays for the work performed in conducting the pretrip inspections.
>
>                 *      *      *
>
> 15.    Unlike the first of that day's inspection, however, the day's second inspection is "off the clock." In other words, SEPTA does not pay for the second inspections. Instead, all "swing run" drivers start "on the clock" only after their buses leave the district. Necessarily, pretrip inspection must occur before buses leave the district.

Affidavit of Allison Cooper at ¶13 (attached to Doc. No. 12 as Exhibit E). The clear import of Cooper's affidavit is that compensation is paid for the morning pre-trip inspection. Moreover, in Cooper, "Plaintiffs conceded that subsection (c) [of the City Transit Division's CBA] covers the morning pre-trip inspection by adding 15 minutes to the scheduled run time for having to report in advance of the scheduled starting time." Cooper v. SEPTA, 699 F.Supp.2d 690, 695 (E.D. Pa.

2010).  Thus, it is apparent that Plaintiffs' claim in this case does not cover new ground, and is subject to interpretation of the CBAs.  Under these circumstances, an arbitrator must decide the claim of Plaintiffs.

**IV.   CONCLUSION**

For reasons stated above, Defendant SEPTA's Motion to Dismiss will be granted.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID BELL, et al.,                          :
                                             :
            Plaintiffs,                      :     CIVIL ACTION
                                             :
      v.                                     :     NO. 11-4047
                                             :
SOUTHEASTERN PENNSYLVANIA                    :
TRANSPORTATION AUTHORITY,                    :
                                             :
            Defendant.                       :

**ORDER**

**AND NOW**, this 28th day of September 2012, upon consideration of the Motion to

Dismiss filed by Defendant Southeastern Pennsylvania Transportation Authority's ("SEPTA")

(Doc. No. 12), Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (Doc.

No. 17), Defendant's Reply Brief in Support of its Motion to Dismiss (Doc. No. 18), and the

arguments made by counsel for the parties at the November 30, 2011 hearing, it is **ORDERED** as

follows:

1.      The Motion to Dismiss (Doc. No. 12) is **GRANTED**. The Complaint is

        **DISMISSED** for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P.

        12(b)(1).

2.      Any pending motions are **DENIED as MOOT**.

3.      The Clerk of Court is directed to close this case for statistical purposes.

                                    BY THE COURT:

                                     /s/ Joel H. Slomsky
                                    JOEL H. SLOMSKY,  J.